STATE *v.* BENJAMIN KING.

The Constitution does not repeal section 2, chapter 34, of the Revised Code ; it repeals only so much of it as imposes death as a punishment: *Hence*, one can be now indicted, convicted and punished for burning a mill-house in 1863.

INDICTMENT, for burning a grist mill, tried at Spring Term, 1873, of WAKE Superior Court, before *Albertson, J.*

The defendant was arraigned upon the following indictment, to wit :

"STATE OF NORTH CAROLINA,
                    "WAKE COUNTY,
" *In the Superior Court—Fall Term,* 1872.
" The jurors for the State, upon their oath, present that

Benjamin King, late of the county of Wake, on the first day of May, in the year of our Lord one thousand eight hundred and sixty-three, with force and arms at and in the county aforesaid, a certain grist mill-house there situated, the property of William Lynn, wilfully, felloniously and unlawfully did set fire to and burn, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of State.

COX, <i>Solicitor.</i>"

Defendant's counsel moved to quash the indictment, which motion being allowed by the Court, the same was quashed. From this judgment, the State appealed.

*Attorney General Hargrove*, for the State.
*Battle & Son*, for defendant.

RODMAN, J. The indictment found at Fall Term, 1872, charges that on 1st May, 1863, the defendant burned a grist mill wilfully and feloniously against the form of the statute. The Judge quashed the bill and the State appealed.

In 1863, the law punished the offense with death. R. C., chap. 34, sec. 2. In 1868, the Constitution (Article XI) enacted:

" Sec. 1. The following punishment only shall be known to the laws of this State, viz: death, imprisonment with or without hard labor, fines, removal from office," &c.

" Sec. 2. Murder, arson, burglary and rape, and these only may be punishable with death if the General Assembly shall so enact."

On 10th April, 1869, (Act 1868-'69, chap. 167, sec. 6,) the General Assembly enacted: " Every person convicted of any crime whereof the punishment has hitherto been death by the laws of North Carolina, existing at the time the present Constitution went into effect, other than the crimes

before specified (among which is not included the one here charged) shall suffer imprisonment in the State's prison for not less than five, nor more than sixty years."

The counsel for the defendant contends that he cannot be punished by the Revised Code, for that has been repealed by the Constitution, or by that in connection with the Act of 1869. Nor by that Act, because it is not retrospective. Nor by the common law, because by that the offense was only a misdemeanor, and the prosecution of a misdemeanor is barred after two years.

The learned counsel refers us to Dwar. Stat. 677, which cites *Rex* v. *McKenzie*, Rup. &|Ry. C. C. 429.

That case was this : The defendant was indicted for private stealing in a shop on 11th July, 1820. The statute of 10 and 11, W. 3 C. 23, which was then in force, deprived persons convicted of such an offense of the benefit of clergy. The statute, 1 Geo. IV, ch. 117, was passed 25th July, 1820, and in terms repealed the Act of W. 3, and enacted that from and after the passing of the Act every person convicted, &c., should be transported for life. The Judges held that neither statute was applicable to the offense, but the prisoner must be punished for a common larceny.

We think the counsel takes a mistaken view of the intent and effect of the Constitution.

The effect of his interpretation of secs. 1 and 2, of art. 11, would be that immediately upon the adoption of the Constitution, all offenses which were punishable otherwise than by fine and imprisonment, (including murder, arson, burglary and rape) would cease to be punishable at all, until a punishment should be anew prescribed by the Legislature. We say, including murder, &c., for it was evidently the intention of section 2, that these offenses should cease to be punishable with death, unless the Legislature should so enact. It is true the counsel does not push his proposition quite so far ; he admits that the common law punishment

could be imposed, provided the offense was not out of date. But it cannot have been the intention of the Constitution to restore, for the interval which must have been foreseen between its adoption and the action of the Legislature, the common law punishments, for among these were whipping and the pillory, the very punishments which it was most anxious to prohibit.

To interpret these two sections we must look at section 24, article 4, which says that the laws not repugnant to the Constitution shall be in force until lawfully altered, and section 1, of article 14, which says that indictments that have been found, or may hereafter be found, for any crime or offense committed before the Constitution takes effect, may be *proceeded upon in the proper Courts,* but no punishment shall be inflicted which is forbidden by this Constitution.

"Proceeded upon," &c., of course, means proceeded upon to judgment, which includes the condemnation to some punishment. The punishment shall not be death, for that is forbidden for this offense, but it may be any not forbidden, (including imprisonment with hard labor) which it shall be, remains necessarily in the discretion of the Court, at least until the Legislature shall control its discretion by a law.

The Constitution does not repeal section 2, of chapter 34, of Revised Code; it repeals only so much of it as imposes death as a punishment for this offense; the act remains a crime subject to any lawful punishment. The distinction between a statute which wholly repeals a former one creating or punishing a crime, and one which only takes away or alters the punishment is a plain one. If the second statute takes away the punishment, and the offense was not one at common law, the first statute is in effect repealed. If, however, there was a punishment at common law, that

punishment is restored. That was the case of *Rex* v. *Mc-Kenzie*.

We think there is an existing punishment beyond fine and mere imprisonment, which is applicable to the offense, and that the indictment should not have been quashed.

The remaining question whether the Act of 1869 applies to the offense, is of small importance, as it only controls the discretion of the Court as to the minimum of punishment. The language is broad enough to cover a prior offense, and we are inclined to think it was so intended. As it lessens the punishment applicable when the offense was committed, the Act is not *expost facto* in the legal sense.

PER CURIAM. Judgment reversed and case remanded.